## John Wanamaker v. Weintraub et al.

George Sterner, for plaintiff; Hirsh W. Stalberg, for defendants.

ALESSANDRONI, J., March 28, 1932.—The plaintiff brought suit against M. M. Weintraub to recover the price of merchandise sold and delivered to M. M. Weintraub on December 19 and 22, 1919. The purchase price of these goods was $572.50. The case came on for trial before the Hon. J. Willis Martin, who, after hearing the evidence, found the following facts:

1. The case was tried by a judge without a jury.

2. The goods were purchased by defendant and delivered to him.

3. There was no written agreement by George R. Weintraub to assume the debt of defendant.

4. There was no evidence presented at the trial to prove the agency of defendant to authorize the charge against George R. Weintraub's account other than the testimony of defendant to the effect that the authorization had been given to him.

5. George R. Weintraub was not called as a witness.

6. There was testimony offered that he had not authorized the purchase or the charge to be made to his account.

7. Defendant failed to prove the authority to make the purchase as the agent of George R. Weintraub or to cause the debt to be charged against him.

8. Upon learning that the charges had been made against him, George R. Weintraub denied that there was authorization on the part of any one to obligate him for the debt.

9. The furniture was retained in the possession of M. M. Weintraub and not returned to plaintiff.

The trial judge also filed the following conclusions of law:

1. M. M. Weintraub is liable for the debt.

2. Judgment should be entered in favor of John Wanamaker, the plaintiff, against M. M. Weintraub, the defendant, for the amount of the claim, with interest.

The following order was entered:

"And now, August 18, 1930, it is ordered and directed that judgment be entered against the defendant, M. M. Weintraub, in favor of John Wanamaker, plaintiff, in the sum of $938.43, being the price of the furniture purchased by defendant [$572.50] with interest [$365.93] calculated thereon from December 22, 1919, to the date of this order.

(Signed)    "J. WILLIS MARTIN, P. J."

And as to the suit of John Wanamaker v. Jean Weintraub Sotoloff, the following order was made:

"And now, August 18, 1930, counsel for plaintiff and defendant in the above-entitled case having agreed that the decision in the case of John Wanamaker v. M. M. Weintraub, C. P. No. 5, March Term, 1931, No. 7560, will govern the

38

decision in the above-entitled case; and it appearing that the defendant, Jean Weintraub Sotoloff, is indebted to plaintiff, John Wanamaker, in the sum of $129.50, being the price of merchandise purchased by her, it is ordered that judgment be entered in favor of plaintiff, John Wanamaker, Philadelphia, and against the defendant, Jean Weintraub Sotoloff, in the sum of $212.31, being the amount of the aforesaid indebtedness with interest [$82.81] calculated on the several items thereof from the respective dates of charges to the date of this order.

(Signed)    "J. WILLIS MARTIN, P. J."

After these orders had been made on the part of the trial judge, both of the defendants filed motions for judgment n. o. v. in their respective cases, and in support thereof counsel for the defendants has filed a brief, which has been answered by counsel for the plaintiff.

The evidence adduced at the time of the hearing was to the effect that M. M. Weintraub had gone to Wanamaker's store on December 19 and 22, 1919, and had selected the goods which are being sued for in this case. At the same time he asked the plaintiff to charge the goods to his brother, George Weintraub. After Wanamaker's credit man had made some investigation as to the responsibility of the parties with whom they were dealing, the sales were made and the goods delivered to the defendant, M. M. Weintraub. When George Weintraub was called upon to make payment for these goods he denied any responsibility, stating that he had never authorized his brother, M. M. Weintraub, to make these purchases and charge the same to him. He also denied that his brother had any authority to act as his agent in the purchase of these goods. Whereupon the plaintiff has brought this suit in order to compel M. M. Weintraub, who not only purchased the goods but who received and retained them, to make payment.

The question of agency arises in this case, and it is said in 2 C. J. 419 that " 'Agency' in its broadest sense includes every relation in which one person acts for or represents another by his authority. In the more restricted sense in which the term is used in the law of principal and agent, agency may be defined as the relation which results where one person, called the principal, authorizes another, called the agent, to act for him, with more or less discretionary power, in business dealing with third persons." And in the same work, on page 432, it is said: "It is a fundamental principle that the relation of agency can exist only by the will of the principal and with the consent of the agent. In other words, as agency ordinarily results from one form of contract, there must, in general, be a contract of employment, express or implied, which must possess the essential elements of every contract," and, on page 803, we find that "A person who assumes to act as agent for another impliedly warrants that he has authority to do so; and if, therefore, he in fact lacks authority, he renders himself personally liable on the warranty to one who deals with him in good faith in reliance thereon, although, according to some decisions, his liability is that of principal."

In the instant case, if George Weintraub did not authorize his brother, M. M. Weintraub, to make these purchases for him and have the same charged to his account, then there was neither agent nor principal so far as the contractual relations between the brothers are concerned, and if that be true, then the defendant secured these goods by and through false representations and undoubtedly he would be liable for the purchase price, and especially is this true when he had the goods delivered to himself and kept and used the same. On page 808 of the same work above referred to, it is said: "An agent will be held personally liable where he professes to enter into a contract for a

principal who is at the time nonexistent, or legally incompetent or irresponsible, even though in thus entering into the contract he acts in good faith, as an agent assuming to contract for a principal must make a contract binding upon some principal or else he himself is liable. In accordance with this rule, it has been held that an agent is personally liable where he professes to enter into a contract on behalf of an unincorporated association, club or committee, or on behalf of a corporation, before its incorporation, even though the contract is entered into under the seal of the corporation.

"This rule, however, does not apply where the third person has knowledge of the nonexistence or incompetency of the principal; or where it is expressly understood either that the agent shall not be held and the contractee with knowledge of the facts extends credit to the supposed principal, or that the agent's liability shall be limited to a fund held by him for the purpose of his agency."

In the instant case, the situation would be quite different had the goods been delivered to George Weintraub and had he retained and used the same. Then, of course, that would have been an affirmation of the assumed authority of M. M. Weintraub to make the purchases and have the same charged to George Weintraub's account, but it would be a fraud not only upon the plaintiff in this case but also upon George Weintraub, the brother of the defendant, to permit the defendant, without the knowledge or consent of his brother, to go into a store and purchase large quantities of goods and have them charged in a manner in which the charges were made in this case, and then have the goods delivered to himself without being paid for. We do not believe that there is any law in the books that would countenance or sustain any such inequitable and unconscionable transaction.

Counsel for the defendant has called the court's attention to the fact that the goods were charged against George Weintraub instead of his brother, M. M. Weintraub, and it is urged that because the plaintiff has made the charges in this way it cannot now change its books and bring an action against another party. However, that is not the law. If one through error or mistake charges goods to the wrong party, that does not relieve the responsible party from payment thereof. In other words, one is not permitted to repudiate a just debt simply because there has been a mistake in a book entry. That principle has been well established in the case of Ashman v. Weigley, 148 Pa. 61, where it was held, reading from the syllabus: "A mere mistake on the part of the plaintiff in charging goods to the wrong person will not discharge the real debtor. By such mistake the plaintiff does not lose his right of action against the person to whom and at whose request he furnished his materials and labor."

Counsel for defendant in his brief lays great stress on the fact that there was certain evidence offered at the time of the hearing which was inadmissible, and, therefore, should not have been considered by the trial judge. The learned trial judge does not state in his opinion and order whether or not this evidence was considered in his findings of fact and conclusions of law. However, it is only right to assume that in the analysis of the evidence submitted to the trial judge only the material evidence was considered and that all the immaterial evidence was discarded, and, therefore, we do not deem it necessary to enter into a discussion as to the admissibility of that part of the evidence that was objected to at the time of the hearing.

After a careful reading of all the evidence adduced at the time of the trial, we are of the opinion that the trial judge did not err in any of his findings of fact and conclusions of law, and, therefore, the motion for judgment n. o. v.

in both of these cases should be denied and the findings and conclusions of the trial judge, both as to facts and the law, should be affirmed.

And now, to wit, March 28, 1932, for the reasons heretofore stated, the motions for judgment n. o. v. in the above cases are denied and the findings of fact and conclusions of law of the trial judge are affirmed.